UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TAWANNA GILFORD,

                        Plaintiff,

            -v-

NYS OFFICE OF MENTAL HEALTH,
                        Defendant.

17-CV-8033 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Tawanna Gilford filed this action against the New York State Office of Mental
Health ("OMH"), alleging that OMH retaliated against her because she opposed OMH's
discriminatory employment practices in violation of Title VII of the Civil Rights Act of 1964, 42
U.S.C. § 2000e *et seq.* ("Title VII"). (Dkt. No. 1.) She also alleges that she was denied a
reasonable accommodation for her disability and discriminated against based on her disability in
violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq*. ("ADA").
Finally, she raises claims for discrimination, retaliation, and unlawful interference with rights
under the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"). OMH moves to
dismiss the operative complaint in its entirety under Federal Rules of Civil Procedure 12(b)(1)
and 12(b)(6). For the reasons that follow, the motion is granted.

I.      **Background**

The following factual allegations are drawn from Gilford's First Amended Complaint
(Dkt. No. 11 ("FAC")), and for purposes of deciding this motion are assumed to be true.

Gilford is "an African-American female" who holds a Ph.D. (FAC ¶ 8.) Gilford was an
employee of OMH at Central New York Psychiatric Center ("CNYPC"). (FAC ¶¶ 10–11.) She
started her employment at CNYPC's Downstate Correctional Facility as a Pre-Release

Coordinator and Associate Psychologist around March 21, 2013, and was later transferred to

Bedford Hills Correctional Facility ("Bedford Hills") around October 16, 2013. (FAC ¶¶ 15, 23)

Gilford alleges that various discriminatory acts were committed against her during her

employment at Bedford Hills.

### A.     Allegations Regarding Retaliation

Gilford alleges that she was denied several promotional or training opportunities. First,

she was denied the opportunity to attend the Leadership Development Training in or around

2014 by two white members of the Pre-Release staff, Jeanne Kavanaugh and Lori Schatzel, on

the basis that she had not been employed long enough. (FAC ¶¶ 22, 38.) According to Gilford,

"other employees had been granted other opportunities yet they have been employed at CNYPC

for shorter period[s] of time." (FAC ¶ 38.)

In addition, Gilford alleges that the supervisors in Pre-Release services promoted racial

homogeneity. (FAC ¶ 42.) As examples, she points to the promotions of Schatzel as the Acting

Director of Corrections-Based Operations for CNYPC and of Wendy Vogel, another white

employee, as the Forensic Program Administrator for Pre-Release Services/Director of Pre-

Release Services. (FAC ¶¶ 39, 41.) Gilford also alleges that she "was not informed of a

promotional opportunity" on or around March 2016. (FAC ¶ 40.)

Between February 2016 and April 2016, Gilford emailed Human Resources complaining

about instances of workplace harassment, "back door" promotion, and the lack of diversity

among individuals hired into the "unposted positions." (FAC ¶ 43.) In response to her

complaints, Gilford alleges that the Unit Chief—Catherine McDermott-Coffin—sat down with

her and "justified the unfair hiring practices" and the hostility that Gilford had experienced. (*Id.*)

Gilford alleges three retaliatory acts stemming from her emails to Human Resources.

(FAC ¶ 82.) First, she alleges that Human Resources encouraged her to stop sending emails

regarding her workplace complaints.  (*Id.*; *see also* FAC ¶ 44.)  Second, she alleges that Kavanaugh "publicly chastised" her in an email.  (FAC ¶¶ 45, 82.)  Gilford subsequently notified McDermott-Coffin of Kavanaugh's email and McDermott-Coffin alerted Human Resources of Gilford's "claims of workplace aggression" and "discriminatory hiring practices."  (FAC ¶ 45.) Gilford then communicated her concerns to Human Resources.  (*Id.*)  Third, Gilford alleges that she received the biggest reduction in employee extra service hours.  (FAC ¶ 46)  For example, her "hours were reduced from 32 hours to 24 hours" around April 2016, whereas "Caucasian employees received increases [in extra service hours] between July–August, 2016."  (*Id.*) Gilford's extra service hours were restored back to 32 hours around November 2016.  (FAC ¶ 48.)

**B.**    **Allegations Relevant to Gilford's Disability Claims**

Gilford further alleges that she suffers from both physical and mental pain, and that OMH discriminated against her on the basis of her physical disability (FAC ¶ 53), and refused to accommodate her mental disability (FAC ¶ 102).

Gilford alleges that she injured her cervical spine and rotator cuff in a car accident in 2007.  (FAC ¶ 49.)  She applied for a reasonable accommodation under the ADA, seeking a lumbar back support cushion and a footrest from OMH to address pain caused by her injuries. (FAC ¶ 50.)  Soon after her request was granted, Gilford alleges that she was discriminated against because Schatzel and Deb McCullough revoked the Unit Chiefs' ability to order office supplies, including supplies to effect reasonable accommodations of disabilities.  (FAC ¶¶ 52– 53.)

In terms of her mental disability, Gilford alleges that Schatzel, McCullough, Vogel, and Lisa Kanycr inflicted mental pain on her.  (FAC ¶ 55.)  According to Gilford, she started mental health treatment around September 2014, discussing her work experiences as part of her

treatment.  (FAC ¶ 56.)  The director of Human Resources, Patricia Bardo, however, "dismissed [Gilford's] concerns regarding [her] mental pain."  (FAC ¶ 57.)  In addition, Gilford also alleges that OMH has failed to accommodate her mental disability because OMH refused to "discontinue sending emails with red flags and/or markings that would result [in] disclosure of [Gilford's] privacy records."  (FAC ¶¶ 101–102.)

### C.    Allegations Implicating the FMLA

In July 2016, Gilford scheduled a tonsillectomy and requested two weeks off for recovery, from July 12, 2016 to July 26, 2016.  (FAC ¶ 58.)  On July 25, 2016, Gilford provided a letter from her doctor to McDermott-Coffin stating that Gilford would not be able to come back until August 8, 2016, later than anticipated.  (FAC ¶ 59.)  Gilford returned to work on August 8, 2016, although she did not fully recover from the surgery.  (FAC ¶ 61.)

Also in July 2016, Jennifer Stevenson, a Human Resources employee, allegedly contacted Gilford's doctor directly without her consent, to ask for clarification regarding Gilford's diagnosis.  (FAC ¶¶ 66–67.)  Gilford then filed a grievance based on Stevenson's unauthorized communication with her doctor and a grievance hearing was held on September 12, 2016.  (FAC ¶¶ 68, 71.)  Gilford also alleges that she applied for a position with the medical records team on August 16, 2016, but never received any response.  (FAC ¶¶ 70, 74.)

Finally, Gilford submitted a resignation form on December 8, 2016.  (FAC ¶ 74.)  Thereafter, she requested leave on December 27, 2016 to visit her allergist.  (FAC ¶ 62.)  But McDermott-Coffin denied the request because it was Gilford's last week of employment.  (FAC ¶ 63.)

### D.    EEOC Charge and the Instant Action

On December 6, 2016, Gilford filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC"), alleging racial discrimination and retaliation under Title

VII and the New York State Human Rights Law ("NYSHRL"). (FAC ¶ 73; Dkt. No. 14-1.) On July 17, 2017, the EEOC dismissed Gilford's charge and issued a right to sue letter. (Dkt. No. 14-3.)

Thereafter, Gilford commenced this action on October 18, 2017, asserting five claims against OMH: one claim under Title VII (Count I), two claims under the ADA (Counts II & III), and two claims under the FMLA (Counts IV & V). (Dkt. No. 1.) On January 5, 2018, OMH moved to dismiss Gilford's complaint. (Dkt. No. 6.) In response, Gilford filed a first amended complaint on February 12, 2018. (Dkt. No. 11.) The Court denied OMH's motion to dismiss the original complaint as moot in light of the first amended complaint. (Dkt. No. 12.) OMH moved to dismiss the first amended complaint on March 5, 2018. (Dkt. No. 13.) This motion is ripe for resolution.

## II.    Legal Standard

A district court must dismiss a claim for lack of subject matter jurisdiction if it "lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008)); *see also* Fed. R. Civ. P. 12(b)(1). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads facts that would allow "the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must "accept[] as true the factual allegations in the complaint and draw[ ] all inferences in the plaintiff's favor." *Allaire Corp. v. Okumus*, 433 F.3d

248, 249–50 (2d Cir. 2006) (quoting *Scutti Enters., LLC v. Park Place Entm't Corp.*, 322 F.3d 211, 214 (2d Cir. 2003)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## III. Discussion

### A. The ADA Claims and the FMLA Claims

Gilford asserts two ADA claims and two FMLA claims against OMH, a New York State agency. (FAC ¶¶ 85–127.) The two ADA claims arise under Title I of the ADA because Gilford alleges employment discrimination on the basis of her disability, including OMH's failure to make reasonable accommodation for her disability.[1] *See Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 167–71 (2d Cir. 2013). (FAC ¶¶ 86, 92, 96, 101, 102.) In addition, Gilford brings her FMLA retaliation and interference claims pursuant to the self-care provision of the FMLA because these two claims are based on her right to take medical leave to care for herself instead of a family member. *See Coleman v. Court of Appeals of Maryland*, 566 U.S. 30, 33 (2012) (citing 29 U.S.C. § 2612(a)(1)(d)). (FAC ¶¶ 108, 111, 120, 124.) OMH argues that sovereign immunity under the Eleventh Amendment bars all these claims from being brought in

---

[1] In her opposition brief, Gilford alleges, for the first time, that OMH violated Title II of the ADA. (Dkt. No. 18 at 12.) The Court declines to consider her new allegations in ruling on OMH's instant motion because asserting a claim for the first time in a brief opposing a motion to dismiss "is not a valid means of amending a complaint." *Rivera v. Balter Sales Co.*, No. 14 Civ. 1205, 2014 WL 6784384, at *5 n.2 (S.D.N.Y. Dec. 1, 2014); *see Pehlivanian v. China Gerui Advanced Materials Grp., Ltd.*, No. 14 Civ. 9443, 2017 WL 1192888, at *2 n.2 (S.D.N.Y. Mar. 29, 2017). Moreover, Gilford's reliance on Title II of the ADA is also misplaced because "[a] public employee may not bring a Title II claim against his or her employer, at least when the defendant employer employs fifteen or more employees." *Mary Jo C.*, 707 F.3d at 171.

federal court.  (Dkt. No. 15 at 8–10, 12–13.)  Gilford fails to meaningfully respond to OMH's sovereign immunity argument.  (*See* Dkt. No. 18 at 12–13.)

It is well settled that "[t]he Eleventh Amendment bars suits against state agencies unless the state waives its sovereign immunity or it is validly abrogated by Congress."  *Quadir v. N.Y. State Dept. of Labor*, 39 F. Supp. 3d 528, 536 (S.D.N.Y. 2014) (citing *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429–31 (1997)).  Relevant to the case at bar, "Congress did not abrogate the states' immunity in enacting . . . Title I of the ADA, or the self-care provision of the FMLA."  *Ross v. State of N.Y.*, No. 15 Civ. 3286, 2016 WL 626561, at *3 (S.D.N.Y. Feb. 16, 2016) (internal citation omitted); *see Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 374 (2001) (holding that Congress did not abrogate states' sovereign immunity against discrimination claims arising under Title I of the ADA); *Coleman*, 566 U.S. at 43–44 (holding that Congress did not abrogate states' sovereign immunity against claims arising under the FMLA's self-care provision).

Furthermore, the State of New York has never waived its sovereign immunity from liability under Title I of the ADA, *see Quadir*, 39 F. Supp. 3d at 537, or the self-care provision of the FMLA, *cf. Ross*, 2016 WL 626561, at *3.  Since OMH is a state agency, all of Gilford's ADA and FMLA claims against OMH are barred by the Eleventh Amendment.  *See Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) ("The immunity recognized by the Eleventh Amendment extends beyond the states themselves to 'state agents[.]'").

### B.     The Title VII Claim

Gilford's remaining claim alleges that OMH violated Title VII by retaliating against her because she opposed OMH's alleged discriminatory employment practices.  (FAC ¶¶ 80–84.)  OMH responds with two arguments: (1) Gilford's Title VII claim is time-barred to the extent that

the underlying allegations occurred prior to February 10, 2016 (Dkt. No. 15 at 13–15); and (2) Gilford's Title VII claim fails to meet the requisite pleading threshold (Dkt. No. 15 at 15–25). The Court addresses each in turn.

### 1. Statute of Limitations

OMH argues that part of Gilford's Title VII claim is time-barred because the bulk of her allegations fall outside the applicable statute of limitations period under Title VII. The Court agrees.

In a state like New York that has its own state equal employment agency, a claimant has up to 300 days after the alleged unlawful employment discrimination occurs to file a charge with the EEOC. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109–10 (2002); *see also Tewksbury v. Ottaway Newspapers*, 192 F.3d 322, 325–26 (2d Cir. 1999). Here, Gilford filed her charge with the EEOC on December 6, 2016 (FAC ¶ 73); thus, she may not sue for acts that took place more than 300 days earlier, i.e., before February 10, 2016.

In addition, Gilford's Title VII retaliation claim is based on various "discrete acts" that are "not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Morgan*, 536 U.S. at 113. In her complaint, Gilford describes several events that happened prior to February 10, 2016 such as OMH's failure to promote her in October 2015. (*See* FAC ¶ 37–39.) But each of the acts alleged by Gilford gives rise to a separate cause of action. *Morgan*, 536 U.S. at 114 ("Discrete acts such as . . . failure to promote . . . constitutes a separate actionable 'unlawful employment practice.'"). As such, any claim based on discrete acts falling outside the 300-day limitations period is time-barred. *Id.* at 109. Therefore, Gilford cannot rely on the following acts that occurred prior to February 10, 2016 to support her retaliation claim:

- OMH's denial of Gilford's request to attend leadership development training in 2014 (FAC ¶ 38);

- Any alleged racially discriminatory hiring and promotional practices that occurred prior to February 10, 2016 (FAC ¶¶ 37, 42);

- Schatzel's promotion as the Acting Director of Corrections-Based Operations on October 28, 2015 (FAC ¶ 39).

OMH also seeks dismissal of Gilford's allegations regarding emails that she sent to Human Resources complaining about workplace harassment, back-door promotion, and lack of diversity in hiring, to the extent that such emails were sent prior to February 10, 2016. (Dkt. No. 15 at 14.) But the limitations period is intended to bar otherwise-actionable unlawful practices on the part of OMH, not actions of Gilford. Therefore, the Court will consider allegations involving Gilford's emails to Human Resources.

### 2. Failure to State a Claim

OMH argues that Gilford's complaint fails to state a Title VII retaliation claim because (1) her allegations are almost entirely based "upon information and belief," and (2) she fails to establish any of the elements for a prima facie retaliation case under Title VII. (*Id.* at 15.) Because the Court concludes that Gilford's complaint is insufficient to meet the pleading standard under Rule 12(b)(6) because it is almost entirely based "upon information and belief," the Court need not address OMH's second argument.

For a claim to survive a Rule 12(b)(6) motion, the complaint's factual allegations must be enough to make the claim plausible. *Twombly*, 550 U.S. at 555, 570. Although the federal rules have never expressly authorized pleading on information and belief, some courts have held that allegations made in this form satisfy the *Twomby* pleading threshold under certain circumstances. *See* 5 Fed. Prac. & Proc. Civ. § 1224 (3d ed. 2018); *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010). Such circumstances include when the facts pleaded are "peculiarly within

the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." *Id.* (internal citation omitted).

In the factual allegations section of Gilford's complaint, however, all but four paragraphs are based "[u]pon information and belief." (FAC ¶¶ 15–79.) Gilford does not point to any facts upon which her belief is founded. *See Negrete v. Citibank, N.A.*, 187 F. Supp. 3d 454, 461 (S.D.N.Y. 2016) ("[W]hile a plaintiff may plead facts alleged upon information and belief where the belief is based on factual information that makes the inference of culpability plausible, such allegations must be accompanied by a statement of facts upon which the belief is founded." (internal quotation marks and citation omitted)). Nor does she allege any specific facts that are only peculiarly within the opposing party's knowledge. Even more tellingly, scores of the basic factual allegations are clearly within the personal knowledge of Gilford, such as her own employment history and her medical records. But she pleads them "[u]pon information and belief" nonetheless. It raises the question whether the expansive use of "upon information and belief" is due to misstatements on the part of Gilford or drafting errors on the part of Gilford's counsel. Regardless, the complaint as it stands does not allege sufficient facts to support a Title VII retaliation claim.

Gilford responds to this argument by reiterating the plausibility pleading standard under *Twombly*. (Dkt. No. 18 at 17–18.) But her response misses the point. No matter what the pleading standard is, her complaint must at least contain enough factual allegations that are *not* made upon information and belief to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. As it stands, it fails to meet this standard.[2]

---

[2] The only allegations in the factual allegations section of the complaint that are not made upon information and belief are the allegations in paragraph 31 regarding CNYPC's workers'

Gilford has also requested leave to amend her complaint in her response brief. (Dkt. No. 18 at 21–22.) In general, leave to amend is to be freely granted when justice so requires. Fed. R. Civ. P. 15(a)(2). Here, none of the disqualifying factors such as undue delay or futility of amendment is present. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (listing disqualifying reasons that counsel against granting leave to amend). In addition, if Gilford can clarify in her amended complaint which factual allegations are based "upon information and belief" and which are not, the Court will be better positioned to assess the strength of her Title VII claim. Accordingly, Gilford's Title VII claim will be dismissed with leave to replead.

## IV. Conclusion

For the foregoing reasons, OMH's motion to dismiss Gilford's complaint is GRANTED. Counts II through V are dismissed with prejudice. Gilford's Title VII retaliation claim (Count I) is dismissed without prejudice.[3]

Gilford is granted leave to amend her complaint provided that she does so consistent with this Opinion. Any second amended complaint shall be filed on or before April 5, 2019.

The Clerk of Court is directed to close the motion at Docket Number 13.

SO ORDERED.

Dated: March 11, 2019
New York, New York

J. PAUL OETKEN
United States District Judge

---

compensation policy and in paragraphs 77–79 regarding Gilford's alleged damages. (FAC ¶¶ 31, 77–79.)

[3] To the extent the Title VII claim is premised on discrete acts of retaliatory conduct that occurred outside the limitations period—before February 10, 2016—Gilford may not assert claims on the basis of those time-barred acts in any amended complaint.