UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------
TAWANNA GILFORD,
                                    Plaintiff,

             -v-                                        17-CV-8033 (JPO)

N.Y.S. OFFICE OF MENTAL HEALTH,                         OPINION AND ORDER
                                    Defendant.
---------------------------------------------------------------

J. PAUL OETKEN, District Judge:

      Plaintiff Tawanna Gilford alleges that the New York State Office of Mental Health ("OMH") retaliated against her because she opposed OMH's discriminatory employment practices, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). (Dkt. No. 1.) On March 11, 2019, this Court dismissed Gilford's First Amended Complaint but granted her leave to amend her retaliation claim consistent with that Opinion and Order. (Dkt. No. 23.) Now before the court is OMH's motion to dismiss the Second Amended Complaint ("SAC") for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the motion is granted.

**I.    Background**

      The following facts are taken from the operative complaint and assumed true for the purposes of this motion. The Court recounts only those facts relevant to the non-time-barred Title VII retaliation claim that forms the core of the SAC; facts pertaining only to Gilford's previously dismissed ADA and FMLA claims and to the portion of her Title VII claim that this Court already determined is time-barred are set out in this Court's March 11, 2019, Opinion and Order. *See Gilford v. NYS Office of Mental Health*, No. 17 Civ. 8033, 2019 WL 1113306, at *1–3 (S.D.N.Y. Mar. 11, 2019).

Beginning in March 2013, Plaintiff Tawanna Gilford was employed as a Pre-Release Coordinator and Associate Psychologist by Defendant OMH at the Central New York Psychiatric Center ("CNYPC"). (SAC ¶ 15.) In October 2013, Gilford was transferred to CNYPC's Bedford Hills Correctional Facility, where her chief was Catherine McDermott-Coffin. (SAC ¶ 24.) Gilford's regular hours were 8:00 A.M. to 4:00 P.M., but she received work adjustments, which permitted her 24 to 34 extra service hours per month to perform her job duties. (SAC ¶¶ 26–27.)

Beginning in February 2016, Gilford began to send her superiors complaints about "back door" hiring and the "lack of diversity amongst the people who were being hired into [those] 'unposted positions.'" (SAC ¶ 44.) Around March 2016, Gilford consulted with Jeanne Kavanaugh, one of her departmental superiors, regarding open positions. (SAC ¶ 41.) During this same period, she noted in conversation with various individuals that an unposted vacancy had been filled. (*Id.*) At least one individual promoted within Gilford's department during this period was white. (SAC ¶ 42.)[1]

Around that same time, Gilford alleges, she was "publicly chastised in an email by Kavanaugh" (SAC ¶ 46), and during a face-to-face discussion, McDermott-Coffin "justified" the

---

[1] Gilford includes more specific allegations about white employees being hired or promoted into unposted positions, but each of these allegations is made "upon information and belief." This Court dismissed Plaintiff's First Amended Complaint because "all but four paragraphs" of the complaint were pleaded "upon information and belief." *Gilford*, 2019 WL 1113306, at *5. Indeed, that complaint contained "scores of[] basic factual allegations[] clearly within the personal knowledge of Gilford, such as her own employment history and her medical records." *Id.* But allegations upon information and belief are appropriate only if the factual basis of the belief is also pleaded, or if "the facts are peculiarly within the possession and control of the defendant." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010). The Second Amended Complaint does little better. Having once warned Gilford of the consequences of the rote use of "upon information and belief," the Court declines to consider those allegations made upon "information and belief" that are not peculiarly within OMH's control and for which no factual basis is alleged.

hiring practices and the "hostility" Gilford experienced from the departmental staff. (SAC ¶ 44.) Gilford also alleges she was "encouraged to stop sending emails to Human Resources." (SAC ¶ 45.) On or around April 29, 2016, Gilford's extra service hours were reduced from 32 hours to 24 hours. (SAC ¶ 48.) In November 2016, Gilford's extra hours were restored. (SAC ¶ 50.)

On December 6, 2016, Gilford filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC"), alleging racial discrimination and retaliation under Title VII and the New York State Human Rights Law ("NYSHRL"). (Dkt. No. 14-1.) On July 17, 2017, the EEOC dismissed Gilford's charge and issued a right-to-sue letter. (Dkt. No. 14-3.)

Gilford commenced this action on October 18, 2017, asserting five claims against OMH: one retaliation claim under Title VII (Count I), two claims under the ADA (Counts II & III), and two claims under the FMLA (Counts IV & V). (Dkt. No. 1.). Gilford filed a First Amended Complaint on February 12, 2018. (Dkt. No. 11.) OMH moved to dismiss the First Amended Complaint on March 5, 2018 (Dkt. No. 13), and this Court granted the motion to dismiss on March 11, 2019. *See Gilford*, 2019 WL 1113306, at *3–6. The ADA and FMLA claims were dismissed with prejudice, as was the Title VII claim to the extent it relied on discrete acts of allegedly retaliatory conduct that occurred before February 10, 2016, *see id.* at *6 & n.3, but this Court granted Gilford leave to amend the non-time-barred Title VII claim, *see id.* On April 5, 2019, Gilford filed the SAC (Dkt. No. 24), and on April 17, 2019, OMH moved to dismiss the SAC for failure to state a claim (Dkt. No. 25). That motion is now fully briefed and ripe for the Court's consideration. (*See* Dkt. Nos. 26, 30, 31.)

II.     **Legal Standard**

To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

3

*Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible if the well-pleaded factual allegations of the complaint, presumed true, permit the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

## III. Discussion

Gilford alleges that OMH retaliated against her after she complained about discriminatory hiring practices.[2] To survive a motion to dismiss a Title VII retaliation claim, a complaint must plead facts tending to show that (1) the plaintiff was engaged in protected activity; (2) the defendant was aware of that activity; (3) the plaintiff suffered a materially adverse action; and (4) there was a causal connection between the protected activity and the adverse action. *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013).

Defendants contend that Gilford has not pleaded facts sufficient to meet the first, second, or third elements. As to the first element, the Court is persuaded that Gilford has alleged that she engaged in protected activity. "An employee's complaint may qualify as protected activity, satisfying the first element of this test, so long as the employee has a good faith, reasonable belief that the underlying challenged actions of the employer violated . . . Title VII." *Kelly*, 716 F.3d at 14 (quotation marks and citation omitted). Here, the SAC alleges that OMH hired white candidates into unposted positions and that on or around February 10, 2016, Gilford emailed the

---

[2] The SAC reasserts claims under the ADA and FMLA that this Court dismissed with prejudice in its March 11, 2019 Opinion and Order. *Gilford*, 2019 WL 1113306, at *3–5. That attempt is barred by this Court's prior decision. *See id*. Accordingly, Counts II through V of the SAC are dismissed with prejudice. Additionally, in pleading her Title VII claim, Gilford relies on conduct occurring outside the limitations period. Reliance on those acts too is barred by the law of the case. *See id.* at *6 n.3.

4

Human Resources Department highlighting "examples of individuals[] promoted through the 'back door' of civil service" and complaining about the "lack of diversity amongst the people who were being hired into the 'unposted positions.'" (SAC ¶¶ 39–44.) Taking a divide-and-conquer approach, OMH argues that Gilford's complaint does not constitute protected activity because, considered individually, neither a lack of compliance with civil service requirements nor generalized complaints about diversity are protected conduct under Title VII. (*See* Dkt. No. 26 at 12–13.) But Gilford's claim, construing the allegations in the light most favorable to her, is that the failure to post job openings *caused* the lack of diversity. Unlike the cases cited by OMH, then, Gilford has alleged a specific employment practice — backchannel hiring — that she reasonably believed violated Title VII and that she opposed in her complaints to OMH staff. *See Collette v. St. Luke's Roosevelt Hosp.*, 132 F. Supp. 2d 256, 275 (S.D.N.Y. 2001) (holding that Title VII plaintiff had engaged in protected activity by complaining that her employer's failure to post job openings, which violated federal regulations, disadvantaged non-Jewish applicants).[3] She has therefore alleged that she engaged in protected activity.

OMH's contention that Gilford has failed to allege that OMH *knew* she was engaging in protected conduct fails for similar reasons. "[I]mplicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII." *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998). Defendants

---

[3] Gilford also suggests that her complaint to HR about Kavanaugh's "publicly chastis[ing]" her (SAC ¶ 46) constitutes protected activity, lumping this conduct with the allegations related to backchannel hiring and declaring that together they form a "mosaic" of protected activity (Dkt. No. 30 at 7). But Gilford fails to explain how Kavanaugh's email relates to perceived discrimination under Title VII.

argue that Gilford's complaints about "workplace harassment," "promot[ion] through the 'back door' of civil service," and "a lack of diversity" were too vague to put OMH on notice that she was opposing conduct prohibited by Title VII. (Dkt. No. 26 at 11.) But Gilford's complaints, as alleged, unambiguously and straightforwardly stated that there was a "lack of diversity amongst the people who were being hired into the 'unposted positions.'" (SAC ¶ 44.) This pellucid complaint was sufficient to put OMH on notice that she engaged in a protected activity.

Gilford's claim, however, falters at the third and fourth prongs, as she has failed to allege an adverse employment action taken in retaliation for her protected conduct. A "plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment." *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (citation omitted). A "materially adverse" change is one that is "more disruptive than a mere inconvenience or an alteration in job responsibilities." *Id.* (quotation marks and citation omitted). Gilford argues that OMH's "justifying" its allegedly discriminatory hiring practices and discouraging from her continuing to email HR constitutes such an adverse action. (Dkt. No. 30 at 12.) But it is well established that a "failure to investigate a complaint of discrimination" itself is generally not considered "retaliation for the filing of the same discrimination complaint," *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010), as it is not the kind of harm that would "dissuade a reasonable worker from making . . . a charge of discrimination" in the first place. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006). By the same token, an employer's justifying its allegedly discriminatory practices does not constitute an adverse action. Title VII does not bar employers from responding to employees' protected conduct by unharmful means. Nor, for the same reason, does Gilford's

vague and bare allegation that McDermott-Coffin "justified the hostility that Plaintiff had been experiencing" constitute an adverse action. (SAC ¶ 44.)

The reduction in Gilford's hours requires closer attention, but it too ultimately fails to support her claim of retaliation. Though a reduction in hours may constitute an adverse employment action, Title VII requires more: that there exist a causal connection between the action and the protected activity. *See Chamberlin v. Principi*, 247 F. App'x 251, 253 (2d Cir. 2007). Gilford has not alleged any facts directly showing the causal connection, nor has she "established [the connection] indirectly by showing that the protected activity was closely followed in time by the adverse action." *Id.* (quoting *Lovejoy-Wilson v. NOCO Motor Fuel Inc.*, 263 F.3d 208, 224 (2d Cir. 2001). Courts in this Circuit have held that the passage of two months between protected activity and adverse action can be too long, without more, to support an inference of causation. *See Murray v. Visiting Nurse Servs. of N.Y.*, 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007) (collecting cases suggesting that two to three months is often regarded as the maximum for temporal proximity supporting an inference of causation). Approximately two and a half months separated the complaints regarding backchannel hiring and the reduction of Plaintiff's hours.[4] And nothing else in the complaint could reasonably be construed to support an inference of causation. The retaliation claim must be dismissed.

---

[4] Gilford's allegations, taken on their own terms, actually suggest that any adverse reduction in extra service hours may not have occurred until July. That is because the complaint alleges that the *entire department*'s extra service hours were reduced in April, and it was not until July that other employees' hours were restored. (*See* SAC ¶ 47.) "The claim that the [adverse action] was tied to" Gilford's protected conduct has the "sheen of implausibility because the" reduction "affected an entire" department. *See Clemente v. New York State Div. of Parole*, 684 F. Supp. 2d 366, 375 (S.D.N.Y. 2010). Nonetheless, the allegation that all employees' hours were reduced was made "upon information and belief." Accordingly, the Court disregards the allegation and rests its determination on other ground.

### IV. Conclusion

For the foregoing reasons, OMH's motion to dismiss is GRANTED.

The Clerk of Court is directed to close the motion at Docket Number 25 and to close this case.

SO ORDERED.

Dated: March 31, 2020
      New York, New York

                                    J. PAUL OETKEN
                                 United States District Judge